# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRIAN PRESKI             :         CIVIL ACTION
                                    :

       v.                      :

                                    :

JOSH SHAPIRO, et al.         :         NO. 3:19-CV-00288

                                        (Judge Caputo)
                                        (Magistrate Judge Carlson)

---

## PRESKI'S REPLY TO COMMONWEALTH'S RESPONSE TO THE PETITION FOR WRIT OF HABEAS CORPUS AND MEMORANDUM OF LAW

**BOCHETTO & LENTZ, P.C.**
George Bochetto, Esquire
I.D. No. 27783
1524 Locust Street
Philadelphia, PA 19102
(215)735-3900
gbochetto@bochettoandlentz.com
*Attorney for Petitioner*

# TABLE OF CONTENTS

INTRODUCTION ............................................................... 1

I.  Preski's PCRA Petition, and Now Habeas Petition, Was Timely
    Filed and Ripe for this Court's Adjudication ................................ 2

II. Preski's Claims Are <u>Not</u> Barred by his Guilty Plea .......................... 10

III. Preski's *Youngblood* Claim Is Appropriately Before this Court ........... 15

IV. Preski's Judicial Bias Claim Is Appropriate Before this Court ............ 18

CONCLUSION ................................................................... 24

## TABLE OF AUTHORITIES

*Baggett v. Bullitt,* 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964) ....... 5

*Banks v. Dretke*, 540 U.S. 668 (2004) ................................................... 9, 16

*Barnhart v. Kyler*, 318 F. Supp. 2d 250 (M.D. Pa. 2004) ............................. 19

*Berry v. United States*, 412 F.2d 189 (3d Cir. 1969) ................................... 13

*Blackledge v. Allison*, 431 U.S. 63 (1977) ............................................... 11

*Blackledge v. Perry*, 417 U.S. 21 (1974) .................................................. 14

*Brady v. Maryland*, 373 U.S. 83 (1963) ................................................... *passim*

*Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001) ....................................... 22

*Class v. United States,* 138 S. Ct. 798, 802–03, 200 L. Ed. 2d 37 (2018) ............. 14

*Commonwealth v. Peoples*, 456 Pa. 274 (1974) ......................................... 8

*Commonwealth v. Preski*, 2017 Pa. Super. Unpub. LEXIS 4536, *17-20
    (Pa. Super. Ct. 2017) ....................................................................... 20

*Dennis v. Secretary, Pa. Dept. of Corrections*, 834 F.3d 263 (3d Cir. 2016) .......... 14

*Doe v. Cabrera*, 134 F. Supp. 3d 439 (D.D.C. 2015) .................................... 23

*Hamid v. Price Waterhouse*, 51 F.3d 1411 (9th Cir. 1995) .............................. 23

*Heleva v. Brooks*, 581 F.3d 187 (3d Cir. 2009) .......................................... 3, 4, 5

*Holland v. Florida,* 560 U.S. 631, 130 S.Ct. 2549, 2562, 177 L.Ed.2d 130 (2010) ... 4, 5

*Illinois v. Fisher*, 540 U.S. 544 (2004) ...................................................... 16

*In re Allied-Signal, Inc.*, 891 F.2d 967 (1st Cir. 1989) .................................. 22

*In re Asbestos Sch. Litig.*, 1989 U.S. Dist. LEXIS 2521 (E.D. Pa. Feb. 28, 1989) .... 22

*Jackson v. Thomas*, 2016 WL 4055658 n. 8 (E.D. Pa. Jun. 26, 2016) ................. 4

*Jones v. Cunningham*, 371 U.S. 236 (1963) ............................................... 1

*Jones v. Morton*, 195 F.3d 153, 159 (3d Cir.1999) ...................................... 5

*Kelsey v. United States*, 484 F.2d 1198 (3d Cir. 1973) .................................. 13

*Kennedy v. Great Atlantic and Pacific Tea Co.*, 551 F.2d 593 (5th Cir. 1977) ......... 22

*LaCava v. Kyler,* 398 F.3d 271 (3d. Cir. 2005) ........................................... 4

*Lonchar v. Thomas,* 517 U.S. 314, 326, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996) .... 4

*Matthew v. Johnson,* 201 F.3d 353 (5th Cir. 2000) ………………………………… 15

*Mathis v. Huff & Puff Trucking, Inc.,* 787 F.3d 1297 (10th Cir. 2015) ……………… 23

*McCarthy v. United States,* 394 U.S. 459 (1969) …………………………………… 13

*Miller v. N.J. State Dept. of Corr.,* 145 F.3d 616 (3d. Cir.1988) …………………… 5

*O'Sullivan v. Boerckel,* 526 U.S. 838 (1999) ……………………………………… 19

*Pace* v. DiGuglielmo, 544 U.S. 408 (2005) ……………………………...……… 4

*Parke v. Raley,* 506 U.S. 20 (1992) …………………………………………….... 10

*Parry v. Rosemeyer,* 64 F.3d 110 (3d Cir. 1995) …………………………………… 10

*Sanchez v. United States,* 50 F.3d 1448 (9th Cir. 1995) ……………...…………… 12

*Schlueter v. Varner,* 384 F.3d 69 (3d Cir. 2004) …………..……………………… 8, 9

*Shapiro v. United States,* No. CV 14-1316, 2017 WL 896987, at *5
   (D.N.J. Mar. 6, 2017) ………………………………………………………… 15

*Sims v. Patrick,* 2005 U.S. Dist. LEXIS 22779 (E.D. Pa. Oct. 5, 2005) ……………… 8

*Tollett v. Henderson,* 411 U.S. 258 (1973) ………………………………………… 14

*United States v. Avellino,* 136 F.3d 249 (2d Cir. 1998) …………………………..... 15

*United States v. Brown,* 250 F.3d 811, 816 n.1 (3d Cir. 2001) ……………………..... 15

*United States v. Lough,* No. 4:17-CR-00139, 2019 WL 1040748, at *24
   (M.D. Pa. Mar. 5, 2019) …………………………………………………… 17

*Wortham v. KarstadtQuelle AG (In re Nazi Era Cases Against
   German Defendants Litig.),* 153 F. App'x 819 (3d Cir. 2005) …………...…… 23

*Youngblood v. Arizona,* 488 U.S. 51 (1988) ………………………………………... 1, 16, 17

## STATUTES/CITATIONS

28 U.S.C. §2244 ……………………………………………………………… *passim*

28 U.S.C. § 2254 ………………………………………………………….... 1, 3, 19

Federal Criminal Rule 11 …………………………………………………….. 13

## INTRODUCTION

The writ of habeas corpus exists for cases like that of Brian Preski. The Great Writ, a cornerstone of American jurisprudence, "is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free[.]" *Jones v. Cunningham*, 371 U.S. 236, 243 (1963). Here, this Court should grant discovery and a hearing on Preski's petition because his case presents exactly the grand purpose protected in 28 U.S.C. § 2254.

This case is one where a prosecutor who considered himself above the law trod on Preski's Constitutional rights in three ways. Frank Fina and his team withheld more than ninety witness statements from their Report of Investigation ("ROI") and then destroyed the reports without Preski or his attorney gaining access to them. This constitutes destruction of evidence under *Youngblood* and withholding evidence under *Brady* and its progeny. Despite the affirmative representations to the trial court at the time in 2011 by the prosecution that turned out to be false, the rogue prosecution of Preski destroyed and withheld evidence that was exculpatory—to use only two examples from the petition, Lori Lochetto told the prosecutors that

Preski did separate his political and governmental work, and John Perzel felt coerced to tell the story the prosecutors suggested. This is highly relevant exculpatory evidence that would have changed Preski's decision to plead guilty after the trial had begun, at a time when this information should indisputably have been in his possession under *Brady*. Finally, and equally shockingly, there is evidence that Fina subverted the loyalty of the trial judge's law clerk by providing special treatment in consideration of his job application during Preski's trial.

The idea that any investigation by Preski could have uncovered the scope and depth of wrongdoing by Fina and his team in 2011 ignores the fundamental standards to which prosecutors must be held. The Commonwealth cannot hide behind its own malfeasance, deliberately concealed and destroyed by agents a defendant must assume act honorably, and claim that Preski should have disbelieved the prosecution's representations. All of these events turn on the bad faith of a prosecution team caught in such egregious misbehavior that disciplinary proceedings are moving forward against Fina and at whose feet the vast record of misbehavior in Porngate lies. If any petition ever deserved consideration under the writ of habeas corpus, it is Preski's.

**I.     Preski's PCRA petition, and Now Habeas Petition, Was Timely Filed and Ripe for this Court's Adjudication.**

There are two main flaws with the Commonwealth's position on the issue of timeliness: (1) the Commonwealth ignores the exception to the one-year limitations in Section 2244(d)(1)(B) and (D) – namely that the one-year limitations period does not accrue where, as here, there was an "impediment" to filing the federal habeas application "created by State action in violation of the Constitution"; and (2) in any event, the Commonwealth treats the one-year time bar in 28 U.S.C. §2244 as a rigid jurisdictional bar, while glossing over the fact that the

time bar is always subject to equitable tolling. For both of these reasons, the Court should disregard the Commonwealth's analysis on this issue.

In arguing that Preski's Federal petition is untimely, the Commonwealth's Brief ignores the distinction between the one-year limitations period of 28 U.S.C. § 2244(d)(1)(A) and the provisions of (d)(1)(B) and/or (D), which would extend the running of the limitations period accrual period longer based on the "removal" of a state created unconstitutional "impediment" to filing the federal petition. Here, as fully set forth in the Petition, the Commonwealth created the impediment to the filing of the Petition by concealing Brady material from Preski. The impediment to filing the Federal petition was not fully removed until Preski fully exhausted his rights under State law by filing his PCRA petition and fully pursuing his appellate rights. *See* U.S.C. § 2254(b)(1)("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . .")

The Commonwealth's argument that Preski should have filed a "protective federal habeas" petition does not apply in this scenario since, unlike the case cited by the Commonwealth, Preski was not alerted to the existence of the exculpatory evidence until September 2015, when it was already over three years after his guilty plea and sentencing, which would have been the accrual point that governed under Section 2244(d)(1)(A), absent circumstances satisfying (d)(1)(B) or (D).

For example, *Heleva v. Brooks*, 581 F.3d 187 (3d Cir. 2009), the only case the Commonwealth cites as creating this "stay-and-abeyance" rule for pure unexhausted habeas petitions, dealt with a defendant who was seeking to preserve the *unexpired* limitations period under (d)(1)(A), not one that would be applicable to an after discovered evidence Brady issue

where, like here, (d)(1)(B) or (D) would apply to the accrual of the federal habeas petition. Indeed, the Pennsylvania Supreme Court in *Heleva v. Brooks*, 581 F.3d 187 (3d Cir. 2009) acknowledged this very distinction and limitation of the ruling in *Heleva*. 35 A.3d at 19 n. 12 ("*Heleva* does not change the pertinent analysis here: that case involved a *timely* first federal *habeas* petition, where there was uncertainty respecting the availability of state court exhaustion, and the district's court authority to stay-and-abey in that circumstance.")[1]

In any event, even if Preski's habeas petition were technically "untimely" under Section 2244(d), although it clearly was timely filed, the United States Supreme Court has held that the habeas time bar is not jurisdictional, but is instead subject to equitable tolling. *Holland v. Florida,* 560 U.S. 631, 130 S.Ct. 2549, 2562, 177 L.Ed.2d 130 (2010). In *Holland,* the Supreme Court held that equitable tolling is proper where the petitioner "shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (citing *Pace v. DiGuglielmo,* 544 U.S. at 418). "The diligence required for equitable tolling purposes is 'reasonable diligence.' " *Id.* at 2565 (citing *Lonchar v. Thomas,* 517 U.S. 314, 326, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996)); *see also LaCava v. Kyler,* 398 F.3d 271, 277 (3d. Cir. 2005) (petitioner must exercise reasonable diligence in exhausting state remedies and bringing federal habeas petition).

---

[1]     It should also be noted that the viability of *Heleva*'s so-called "stay and abey" procedure for petitions containing fully unexhausted claims has been called into question since the U.S. Supreme Court has not adopted such a procedure and only adopted a "stay and abey" procedure where the federal habeas petition was "mixed," containing both exhausted and unexhausted claims. *See Heleva*, 581 F.3d at 196-97 (Chagares, J., Dissenting)(noting the Majority was expanding the "stay and abey" procedure to non-mixed petitions beyond what the Supreme Court in *Pace*, 544 U.S. 408 (2005) allowed, effectively overruling prior Supreme Court precedent); *see also Jackson v. Thomas*, 2016 WL 4055658 n. 8 (E.D. Pa. Jun. 26, 2016) (same).

The Supreme Court has not identified what would constitute an "extraordinary circumstance," except to suggest that attorney misconduct could rise to the level of "extraordinary" in some circumstances. *Holland,* 130 S.Ct. at 2563–64. The Supreme Court explained that "the 'exercise of a court's equity powers ... must be made on a case-by-case basis.'" *Id.* at 2563 (quoting *Baggett v. Bullitt,* 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964)); *see also Miller v. N.J. State Dept. of Corr.,* 145 F.3d 616, 618 (3d. Cir.1988) (equitable tolling appropriate where "principles of equity would make [the] rigid application [of a limitation period] unfair").

The Third Circuit has articulated some circumstances where equitable tolling would be justified, such as, for example when (1) the defendant was actively misled, (2) the plaintiff has in some extraordinary way been prevented from asserting his or her rights, (3) the plaintiff has timely asserted rights but has mistakenly done so in the wrong forum, or (4) the plaintiff received inadequate notice of the right to file suit, a motion for appointment of counsel is pending, or the court has misled the plaintiff into believing that he or she has done everything required. *See Jones v. Morton,* 195 F.3d 153, 159 (3d Cir.1999).

This record represents a quintessential scenario justifying equitable tolling. Indeed, Preski filed the instant petition in a timely manner, all the while exercising the necessary due diligence to comply with 28 U.S.C. § 2244(d)(1)(D). In September 2015, Preski obtained a copy of Brett Feese's (Preski's co-defendant) PCRA petition that was filed on August 31, 2015. *See* Feese's Petition, Pet. Ex. A at 19a-52a. Feese's petition revealed that the Commonwealth engaged in severe prosecutorial misconduct that, unbeknownst to Preski at the time, severely injured his ability to exercise his due process rights. *Id.* On September 30, 2015, Lori Lochetto, a witness interviewed by the Commonwealth on multiple occasions with regard to Preski's

allegations, confirmed that she had conveyed a vast amount of exculpatory information to the Commonwealth.[2] On October 9, 2015, approximately one month from when Preski learned of the prosecutorial misconduct and one week after Ms. Lochetto's statements to Preski's counsel, Preski filed a PCRA petition with the Dauphin County Court of Common Pleas; this present Habeas petition follows after four year of continuous litigation. *See* Preski PCRA, Pet. Ex. A at 1a-79a.

The Commonwealth interviewed and called before the Grand Jury no less than 183 witnesses, many of whom provided proffer statements, some of which on multiple occasions. Of these 183 witnesses, 94 had their statements suppressed and/or destroyed by the Commonwealth. The Commonwealth acknowledged the destruction of such notes and sought to justify its conduct with assertions that: (1) the destruction occurred in conformity with office policy, and (2) all disclosures, including assertions of innocence and inconsistent statements or other impeachment material, made by these 94 witnesses during their interviews/statements were elicited by the Commonwealth when the witnesses testified before the Grand Jury, and therefore were contained in the transcripts of the Grand Jury testimony of these witnesses which were provided to the defense prior to trial. *See* Feese's Petition, Pet. Ex. A at 19a-52a; *See* Pet. Ex. A at 280a-84a,

---

[2] Preski's counsel reached out to Lori Lochetto (a witness interviewed by the Commonwealth at least five or six times in this matter) following the filing of Feese's petition. During the interview with Ms. Lochetto, Preski's counsel learned of the vast *Brady* evidence she provided to the Commonwealth that was "material" to Preski proving his case. Lori Lochetto provided the Commonwealth (who were taking notes) with detailed factual examples of the great lengths Preski went to in order to separate his government activities from his political activities. This testimony goes to the heart of the prosecution's case, which accused Preski of commingling government and political activity. Yet, not a single statement provided by Lori Lochetto, nor a single summary of any statement made by Ms. Lochetto, appears anywhere in the ROI, and at no time did the Commonwealth elicit any such exculpatory testimony during Lochetto's Grand Jury testimony. Hence, the Commonwealth's claim that these records were "destroyed under Commonwealth policy" is unequivocally false.

Commonwealth Response to Defense Motion. The Commonwealth's assertions were false. By way of example, Lori Lochetto's exculpatory statements were never disclosed to the Grand Jury nor included in any other document released for the defense to take advantage of.

In a July 29, 2011 Memorandum Order, in response to a Joint Defense Motion to Dismiss and prior to the realization that exculpatory evidence was destroyed and/or suppressed, the Honorable Richard A. Lewis found "that not all the proffer interviews conducted were properly memorialized in the Report of Investigation and that the grand jury transcripts do not adequately capture possible underlying statements." *See* July 29, 2011 Memorandum Order, Pet. at Ex. N. However, with no indication that the prosecution was destroying and/or suppressing exculpatory evidence, the Court denied the Motion to Dismiss, concluding that because of the destruction of the notes, it was impossible to determine their "materiality," and thus impossible to "find that the destruction of the proffer notes in question rise to the level of a due process violation." *Id.*

Only after the filing of Feese's PCRA petition was Preski alerted to the fact that the Commonwealth destroyed and/or suppressed witness statements that contained material exculpatory assertions.[3] Preski quickly filed the PCRA petition that later became the instant Habeas petition; correspondingly, satisfying 28 U.S.C. § 2244(d)(1)(D).

28 U.S.C. § 2244(d)(1)(D), states that a one-year period of limitation will run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *See* 28 U.S.C. § 2244(d). As outlined above, the factual predicate of the claims set forth in Preski's Habeas petition were discovered just one month prior to the filing of his PRCA petition. To make the argument, as the Commonwealth essentially

---

[3] Feese's PCRA petition also alerted Preski of the extreme judicial bias that resulted behind closed doors before, during and after his trial.

does, that Preski should have known about the Commonwealth's unscrupulous conduct and acted on it before the period of limitations ran is (a) unreasonable given that the Commonwealth clearly went to great lengths to conceal the exculpatory evidence and (b) not a consideration that is regularly weighed when a defendant is facing a state prosecutor who is obliged to uphold the due process rights set forth in the United States and Pennsylvania Constitution.

The Commonwealth takes aim at 28 U.S.C. § 2244(d)(1)(D) by arguing that the "claims presented could have been discovered through the exercise of due diligence" at an earlier time and therefore this present action is untimely. *See* Commonwealth Response to Habeas Petition. It is not the prerogative of a defendant to naturally assume that the Commonwealth is acting unethically and against the federal and state constitution as well as statutes and case law by destroying and/or suppressing exculpatory statements; especially when there are no indications of such conduct. However, when facts are later disclosed that clearly represent such prosecutorial misconduct a defendant must be permitted to withdraw his plea so his conviction can be vacated to avoid "manifest injustice." *See Commonwealth v. Peoples*, 456 Pa. 274, 275 (1974) ("court should allow the withdrawal of a guilty plea after sentencing to correct a manifest injustice to the defendant").

Preski satisfies the due diligence standard necessary to obtain a ruling in his favor. "Due diligence does not require 'the maximum feasible diligence,' but it does require reasonable diligence in the circumstances." *Sims v. Patrick*, 2005 U.S. Dist. LEXIS 22779 (E.D. Pa. Oct. 5, 2005) (citing *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004)). Given the circumstances, the Commonwealth deliberately hid exculpatory statements from Preski. All documents and testimony presented by the Commonwealth were stripped of any exculpatory evidence and never produced for Preski to take advantage of as required by *Brady. See Brady v. Maryland*, 373 U.S.

83, 87-88 (1963) ("A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice").

Further, Preski was completely unaware that such evidence was being promulgated and therefore could not have raised this issue earlier. As stated in *Schlueter v. Varner*, a defendant can only avail himself of a later accrual date "if vital facts could not have been known." *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004). Given the nature of the prosecutor's decision to destroy and/or suppress exculpatory witness statements, discovery of such information was not feasible for Preski; not only would Preski have needed to suspect and/or assume the Commonwealth was improperly suppressing and/or destroying exculpatory witness statements, there would need to have been a signal that tipped him off to the misconduct.

In this regard, in terms of Preski's due diligence in uncovering the hidden evidence, the U.S. Supreme Court has plainly stated:

> Our decisions lend no support to the notion that defendants must scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed.

*Banks v. Dretke*, 540 U.S. 668 (2004).

Fortunately, Preski eventually learned of the Commonwealth's misconduct; unfortunately, it occurred as late as September 2015. However, given the circumstances, Preski acted promptly and filed for PCRA relief just one month after he discovered the prosecutorial misconduct.

The notion that Preski should have raised such contentions earlier are absurd and against the interest of the public. In every sense, it would be extreme and unreasonable to require

defendants litigating against the Commonwealth to presumptively assume it is acting unethically, against fundamental legal rights, and in opposition to the best interests of the public. Instead, this Court should recognize the sanctity and trust the People place in the Commonwealth to prosecute on their behalf. Here, the Commonwealth blatantly hid exculpatory evidence. To preserve the public's confidence in the Commonwealth, it must be corrected and deterred from acting in the interest of anyone but the overall public. When the Commonwealth destroys or suppresses exculpatory information exclusively in their possession, it must not be permitted to succeed on a timeliness argument. Such ruling would incentivize the Commonwealth to hide exculpatory evidence in hopes that the period of limitations would run before the defendant learned of its prosecutorial misconduct. In the instances where a defendant eventually learns of the Commonwealth's misconduct, potentially years after trial, the individual would be barred from using the legal system to right the Commonwealth's wrong.

The Court should disregard the Commonwealth's timeliness argument and move to the merits of the Petition.

## II. Preski's Claims Are <u>Not</u> Barred by his Guilty Plea

Preski's petition cannot be barred by his guilty plea because the circumstances surrounding his plea undermine the required knowing, voluntary, and intelligent standard. *See Parry v. Rosemeyer*, 64 F.3d 110, 113-14 (3d Cir. 1995) ("To comport with the Fifth Amendment, a defendant's guilty plea must be voluntary and intelligent."); *see Parke v. Raley*, 506 U.S. 20, 28-29 (1992) ("It is beyond dispute that a guilty plea must be both knowing and voluntary."). Preski did not knowingly, intelligently, or voluntarily enter into his guilty plea. At

the time Preski pled guilty, ***after the commencement of trial,***[4] the Commonwealth was hiding

material exculpatory evidence that would have significantly assisted him in proving his case. The

plea Preski entered was based on the evidence and information available to him at that moment.

Had Preski been in possession of the exculpatory information exclusively held by the

Commonwealth, his strategy in litigating the case would have been consequentially different.

Moreover, Preski would not have entered a guilty plea. This Court shall not hold that Preski was

knowing and intelligent when he entered his plea as it is evident he was not aware of the material

exculpatory evidence that the Commonwealth was concealing from him.

The Supreme Court itself holds that there can be no hard and fast rule about the

preclusive effects of a guilty plea on habeas petitions. *Blackledge v. Allison*, 431 U.S. 63, 75

(1977) ("In administering the writ of habeas corpus and its s 2255 counterpart, the federal courts

cannot fairly adopt a per se rule excluding all possibility that a defendant's representations at the

time his guilty plea was accepted were so much the product of such factors as misunderstanding,

duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate

basis for imprisonment."). In *Blackledge*, a North Carolina man pled guilty in a colloquy based

on a printed form disclosing the potential for a ten-year-to-life sentence, who in fact received a

sentence of seventeen to twenty-one years. *Id.* at 65-69. The Supreme Court noted that the

defendant's plea colloquy took place under what had been found to be a constitutionally infirm

system then in place, and that he made specific enough allegations that "careful consideration," if

not a full hearing, of his claims be performed on remand. *Id.* at 76-82.

---

[4] The Commonwealth's statement, in its Response (at 35-36), that *Brady* claims do not apply
prior to trial, are rendered immaterial by the Commonwealth's admission in is Response (at 7)
that Preski proceeded to trial, and would thus be entitled to *Brady* information.

Here, Preski has, like the defendant in *Blackledge*, set forth detailed facts requiring investigation—and here that investigation should be performed by discovery followed by a hearing—because there is a serious defect in the knowing and voluntary nature of his plea, specifically the wanton destruction of exculpatory witness statements and the issue of judicial bias through the trial judge's law clerk. In fact, *Blackledge* acknowledges that where a misrepresentation is made by others, a guilty plea may be constitutionally inadequate. This case presents precisely the misrepresentation foreseen by *Blackledge*, as the prosecutors here failed to preserve exculpatory witness statements in their ROI that were concealed from Preski even after the beginning of his trial.

The prosecution coerced Preski's admission of guilt by destroying and/or suppressing evidence, some of which rebutted the allegations against Preski. For instance, Lori Lochetto, Preski's former secretary, stated that Preski scrupulously separated his governmental and political duties. Such statement directly negates the Commonwealth's allegations against Preski. Ms. Lochetto was interviewed by the Commonwealth at least five times; she repeatedly provided exculpatory information. However, none of the exculpatory statements made by Ms. Lochetto were reproduced in the Report of Investigation ("ROI"), not evoked before the Grand Jury, nor preserved in any other form. The prosecution took affirmative steps to ensure that exculpatory statements would not come to light; specifically, the Commonwealth destroyed all exculpatory statements and created a misleading summary of their contents in their ROI. Therefore, when Preski entered his guilty plea it was against a record carefully and illegally crafted by the Commonwealth to fit their narrative . Hence, the plea was not a true admission of guilt and does not bar his Habeas petition.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963) the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Ms. Lochetto, in addition to others, have provided exculpatory statements that discredit the crux of the Commonwealth's allegations against Preski. Hence, such statements are considered material and Preski is entitled to their benefit at trial. The court in *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995) held that "[a] waiver cannot be deemed 'intelligent and voluntary' if 'entered without knowledge of material information withheld by the prosecution.'" Accordingly, Preski's guilty plea cannot be construed as being intelligent nor voluntary given that it was provoked with an inaccurate record that was devoid of all exculpatory statements provided by reputable witnesses. When Preski entered the guilty plea, he had no knowledge of the material exculpatory statements collected by the Commonwealth and acted accordingly.

Where a defendant does not fully grasp the consequences of a guilty plea, the plea should be withdrawn. *See Kelsey v. United States*, 484 F.2d 1198 (3d Cir. 1973) (holding that defendant's guilty plea should be withdrawn where he relied on counsel's statements that he faced a sentence of 75 years when the maximum was considerably less). "[A]n essential ingredient of a guilty plea is that it be entered 'voluntarily after proper advice and with full understanding of the consequences." *Berry v. United States*, 412 F.2d 189 (3d Cir. 1969), paraphrasing Federal Criminal Rule 11.

Here, Preski could not possibly have understood that his guilty plea in October 2011 could bar him from pressing his Habeas petition based on prosecutorial misconduct claims, because he did not find out about the prosecutorial misconduct until reading Feese's PCRA

petition in September 2015. It does not further the administration of justice to hold immutable a guilty plea of a defendant—the victim of constitutional violations—when he was not informed of material exculpatory statements. "Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

Presently, Preski meets the burden to withdraw his guilty plea and must be permitted to press this instant Habeas petition. His reasons for withdrawing the plea—the constitutional violations in the concealment and destruction of exculpatory evidence—are strong. The government would not be prejudiced by the withdrawal, rather, it would be afforded the opportunity to correct the wrongdoing of its own prosecutorial agents. After consideration of these three factors, Preski has demonstrated a "fair and just" reason to withdraw the guilty plea that was not made knowingly, intelligently, and voluntarily; ultimately, this petition provides Preski and this tribunal the opportunity to avoid manifest injustice. Given these blatant *Brady* violations, additionally, the trial court's denial of his PCRA claim does not bar his federal rights from vindication in this Court, as the trial court's decision violates *Brady* and its progeny. *Dennis v. Secretary, Pa. Dept. of Corrections*, 834 F.3d 263, 281 (3d Cir. 2016).

The cases cited by the Commonwealth impose no barrier to Preski's relief in his petition. *Class v. United States* does not address a guilty plea on a habeas petition, but a direct appeal. 138 S. Ct. 798, 802–03, 200 L. Ed. 2d 37 (2018). *Tollett v. Henderson*, 411 U.S. 258, 266 (1973), which requires a focus on the knowing and voluntary nature of the plea itself, predates *Blackledge* is therefore modified by *Blackledge*'s examination of misrepresentations by other parties informing a guilty plea; this same analysis applies to *Blackledge v. Perry*, 417 U.S. 21 (1974), a double jeopardy case involving a guilty plea.

The Commonwealth's discussion of whether *Brady* violations can occur in guilty pleas is counterfactual. Preski went to trial without the benefit of exculpatory evidence destroyed by the prosecutor, and thus lost his constitutionally protected rights. *Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). Additionally, contrary to the representation of the Commonwealth, "it remains an open question in this circuit whether a petitioner who pled guilty was entitled to Brady material before entering his plea, and the remaining circuits are split as to that question." *Shapiro v. United States*, No. CV 14-1316, 2017 WL 896987, at *5 (D.N.J. Mar. 6, 2017). For this proposition *Shaprio* relies on the same footnote in *United States v. Brown*, 250 F.3d 811, 816 n.1 (3d Cir. 2001) that Preski relied upon in his petition. Furthermore, *Shapiro* notes a circuit split on this issue. *Compare United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) ("The government's obligation to make such disclosures is pertinent not only to an accused's preparation for trial but also to his determination of whether or not to plead guilty.") *with Matthew v. Johnson*, 201 F.3d 353, 362 (5th Cir. 2000) ("In light of the Court's *Brady v. Maryland* line of cases, it is apparent to us that, at a minimum, a state court would not have felt compelled to hold that the prosecutor's failure to supply Matthew with the CPS documents prior to entry of his plea constituted a *Brady* violation.").

The Court should disregard the Commonwealth's guilty plea argument and move to the merits of the Petition.

III.    **Preski's *Youngblood* Claim Is Appropriately Before this Court**

The Commonwealth was required to preserve, at the very least, the essence of the exculpatory statements made in Preski's favor. Chief Memorandum 2001-02 plainly prohibits

the destruction of interview notes until: (1) the notes are transposed into a formal "Report of Investigation ("ROI")"; and (2) that transposition is approved by the appropriate Commonwealth Regional or Deputy Supervisor.   Pet. at Ex. "A" at R. 06a-7a; 36a.  It is indisputable that Preski suffered an invasion of his due process rights.   The Commonwealth hid exculpatory witness statements that were injurious to their narrative, as demonstrated in the witness statements attached to Preski's petition.  Moreover, the destruction and suppression of such statements by the prosecution has been carried out in bad faith, particularly as there were 94 witnesses excluded from the ROI, and Preski has shown the following:

- Lori Lochetto stated that Preski undertook to separate his government activities from his political activities (Pet. at Ex. A at 54a-55a);

- Hanley admitted to a "disastrous proffer session" not reflected in the ROI (Pet. at Ex. C at 124-25);

- Tomaselli, a witness at trial, could not be confronted with previous statements (Pet. at Ex. C at 102:16-18);

- Perzel was coerced to follow the prosecution's script (Pet. at Ex. B, Lock Cert. on Perzel statement.).

Contrary to the position of the prosecution during the proceedings against Preski, these statements were not provided to the defense.  Defendants are expressly not required to expect this action by a prosecutor, who is expected to do his duty and disclose.  *Banks v. Dretke*, 540 U.S. 668, 696 (2004).  There was, thus, exculpatory evidence not in the possession of the defense when the prosecution averred to the trial court—just before Preski went on trial—that all such evidence had been turned over.

In addition to destroying and/or suppressing the exculpatory statements, Frank Fina influenced the presiding law clerk.  Frank Fina's misconduct may be politically-motivated or result from his craving to win such a high-profile case. Regardless, such behavior is not

uncommon for Frank Fina. A simple internet search for "Frank Fina" will reveal numerous instances where he injured the due process rights of a defendant.[5]

The legal principal established in *Youngblood v. Arizona*, 488 U.S. 51 (1988), and in *Illinois v. Fisher*, 540 U.S. 544 (2004) is that bad faith conduct of the prosecution, by itself, is strong evidence of the value to the defendant of the destroyed evidence. 488 U.S. at 58. In *Youngblood*, the United States Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58. A *Youngblood* violation is shown where the prosecution "(1) acted in bad faith when it destroyed the evidence, which (2) possessed an apparent exculpatory value and, which (3) is to some extent irreplaceable." *United States v. Lough*, No. 4:17-CR-00139, 2019 WL 1040748, at *24 (M.D. Pa. Mar. 5, 2019). Preski can show all three requirements: first, there is ample evidence of bad faith by the prosecution; second, the material is plainly exculpatory; and last, the 94 witness statements taken in 2011 and before are, to a certain extent, irreplaceable.

The Commonwealth's argument that "[e]ven assuming *arguendo* that a witness related what Preski would consider an exculpatory fact . . . there was no evidence than an investigator would have recognized or recorded it as such" is illogical. *See* Commonwealth Response to Habeas Petition at 42. Indeed, a witness statement which directly rebuts allegations against Preski — improper comingling of political and governmental activity — is clearly exculpatory on its face and should have been unilaterally produced by the Commonwealth. In effect, the Commonwealth blatantly hid exculpatory evidence and now blames Preski for not discovering it

---

[5] Fina, Frank G., The Disciplinary Board of the Supreme Court of Pennsylvania, https://www.padisciplinaryboard.org/for-the-public/find-attorney/attorney-detail/71711 (last visited Jul. 5, 2019)

in a timely manner – constituting bad faith. The prosecution destroyed and/or suppressed exculpatory statements and recrafted the statements of 183 witnesses into an inaccurate, incomplete, and misleading summary in the form of an ROI. Further, the Commonwealth acted in contradiction to Chief Memorandum 2001-02 which mandates that interview notes may not be destroyed unless transposed into a formal ROI and approved by a supervisor. Pet. Ex. "A" at R. 06a-7a; 36a. The Commonwealth actively defied and circumvented this well accepted policy, resulting in a trampling of Preski's constitutional rights.

The Commonwealth's argument that the blatant infringement of Preski's due process rights perpetrated by the prosecution was reparable, since "Preski could have simply asked [the witnesses] …what they told the investigators" is misguided. *See* Commonwealth Response to Habeas Petition at 44. The prosecution suppressed and/or destroyed statements from 94 witnesses which were collected between 2009 and 2011. In September 2015, when Preski learned of the prosecution's wrongful suppression of the statements it became incredibly more difficult to contact these same witnesses. In the intervening years, witnesses likely moved beyond reach, passed away, or were otherwise unwilling to answer questions that they already answered four to six years ago. For the witnesses that are available to answer questions, it is likely their memories are not as keen as they were when this suit was first instituted. Ultimately, the Commonwealth injured Preski's ability to exercise his due process rights and avail himself of the exculpatory statements. Regardless, Preski still prays this court to permit discovery to move forward or hold that this action is reverted back to pre-trial status.

For these reasons, Preski deserves discovery and a hearing.

## IV.    Preski's Judicial Bias Claim Is Appropriately Before this Court.

The Commonwealth sets forth a number of poorly supported arguments against Preski's judicial bias assertion (alleging (1) Preski failed to satisfy the exhaustion doctrine, (2) the claim is not properly pled, (3) it does not rise to the level of a due process violation and (4) it is untimely filed).   Contrary to the Commonwealth's assertions, Preski has a well-established claim for relief based on the conflicts of interest that were likely imputed from the law clerk to the Judge; conflicts that were undoubtedly present when key decisions (which affected the course of Preski's case) were made.

The Commonwealth incorrectly alleges the exhaustion doctrine was not satisfied in this proceeding; applicable statute and case law swiftly dismiss this assertion. The statutory version of the exhaustion requirement is as follows:

> An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(c).

Preski has presented the judicial bias claim (as outlined more fully in Preski's Habeas petition and his PCRA petition) to each state court. Accordingly, "[t]he Supreme Court has adopted a significantly relaxed interpretation of the phrase 'any available procedure.'" *Barnhart v. Kyler*, 318 F. Supp. 2d 250, 256 (M.D. Pa. 2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999)). "[T]he petitioner need only present the claims through an established procedural path, one that concludes with review in the high court of the state." *Id.* The exhaustion doctrine merely "mandates exposure, not actual adjudication" of the claim. *Id.* Additionally, "[l]ate or untimely filings, even if insufficient under state procedural rules, satisfy the exhaustion doctrine. *Id.* "Direct appeal serves as the most clearly acceptable means of exhausting a claim, but presentation through other procedural paths is equally effective to meet the requirement." *Id.*

Preski appealed his PCRA petition with the judicial bias claim through each level of Pennsylvania state courts. Once state courts were exhausted, this Habeas petition has followed. Preski has satisfied the exhaustion doctrine and therefore,[6] his constitutional due process claim based on judicial biases is rightfully before this Court.

The Commonwealth also claims Preski did not properly plead the judicial bias issue before the state courts; proclaiming he did not use proper language. However, Preski did use the proper language to interpret the judicial bias claim as a constitutional due process claim. In fact, each state court recognized the due process claim in their Opinions. *See Commonwealth v. Preski*, 2017 Pa. Super. Unpub. LEXIS 4536, *17-20 (Pa. Super. Ct. 2017). Preski's due process claim based on judicial biases was certainly brought before the state courts. *See* Pet. at Ex. A at 4a-5a, Preski PCRA, ("Preski recently discovered in September 2015 that the Commonwealth further violated his **constitutional right to a fair, just and impartial tribunal** by offering, assisting in the procurement of, and, ultimately providing employment to the trial court's judicial Law Clerk during the time Preski's case was pending before the Court, while that Clerk was integrally involved in the adjudication of material issues in Preski's case.") (emphasis added). The state courts also represented in their Opinions that they understood the pleading as a claim for relief resulting from an alleged due process violation. *See Commonwealth v. Preski*, 2017 Pa. Super. Unpub. LEXIS 4536, *17-20 (Pa. Super. Ct. 2017).

As detailed above with regard to Preski's timeliness and due diligence, no reasonable diligence would have revealed the conflict of interest between Frank Fina and the trial judge's law clerk prior to the release of Feese's PCRA petition. The Commonwealth contends that due

---

[6] The Commonwealth's argument that Preski is unable to show "cause," resulting from his alleged inability to satisfy the exhaustion doctrine is moot because Preski, in accordance with well-established case law, has satisfied the exhaustion doctrine.

diligence would have revealed the judicial bias earlier and thus the claim is barred for being untimely filed. A timeliness defense must not prevail as Preski only learned of the judicial bias upon review of Feese's PCRA petition. Preski acted with due diligence during the entirety of his case; however, at the time of his trial, there was no indication that the trial judge's law clerk, Clarke Madden, was applying and being considered for a position in the office of lead prosecutor Frank Fina. In point of actual fact, Madden applied for this position at the time that the trial court decided the motion concerning suppressed evidence and presided over Preski's trial prior to Preski pleading guilty.[7]

Madden began working for Judge Lewis in May 2008 and continued his employment through Preski's guilty plea in October 2011. On September 14, 2011, the Criminal Division circulated a request to fill a vacant position in the Criminal Prosecutions Section/Harrisburg. Pet. at Ex. D. Madden applied to the position in Frank Fina's office on September 15, 2011, just one business day before the start of Preski's trial. The timeliness of Madden's application cannot reasonably be categorized as serendipitous as the position had been posted for over one year prior to Madden submitting his "fast tracked" application. Pet. at Ex. A at 40a (Feese Pet. ¶ 109).

Prior to the commencement of Preski's trial, the court heard and conducted in-camera review of documents on the pre-trial motions while Madden was presiding over the case as a law clerk. Pet. at Ex C at 4:8 ("THE COURT: Clarke, make a note…"). ***During*** Preski's trial, the Commonwealth Director of Human Resources forwarded a list of candidates for the vacant Deputy Attorney General position to Fina. On October 6, 2011, Preski entered his guilty plea.

---

[7] Upon permission from this court to do discovery, the defense desires to conduct a thorough investigation to determine the extent of conflicted interests and its imputation to Judge Lewis.

Three weeks later (on October 28, 2011), Madden was added to the list of candidates and ranked as the most qualified. Pet. at Ex. H. Despite Madden's incomplete application and failure to work a full schedule as a law clerk,[8] he bypassed experienced applicants. Pet. at Ex. E, Ex. A at 42a. On November 8, 2011, the trial against Preski's co-defendant ended; just three weeks after (on November 29, 2011), Madden was approved for hire. Pet. at Ex. I. The EAG even commented with regard to Madden's hiring, "That was fast." Throughout Preski and his co-defendant's trials, Madden was having his job application considered on an accelerated basis through Frank Fina's office. Pet. at Ex. J.

Given the above-stated facts, it is reasonable to believe that Madden was conflicted when he presided over Preski's case and likely imputed his conflict upon Judge Lewis in the process. *See Byrne v. Nezhat*, 261 F.3d 1075, 1102 (11th Cir. 2001) ("a law clerk has a financial incentive to benefit a future employer. Given this financial incentive, if ever a law clerk were of a mind to influence his judge, it would likely be for the benefit of a future [employer]."); *See In re Asbestos Sch. Litig.*, 1989 U.S. Dist. LEXIS 2521 (E.D. Pa. Feb. 28, 1989) (citing *Kennedy v. Great Atlantic and Pacific Tea Co.*, 551 F.2d 593 (5th Cir. 1977)) ("It is the duty of the law clerk 'as much as that of the trial judge to avoid contacts outside the record that might affect the outcome of the litigation.'"); *See In re Allied-Signal, Inc.*, 891 F.2d 967 (1st Cir. 1989) ("[T]he relationship of clerk to judge itself is close enough that one might find an appearance of undue influence.").

---

[8] During calendar year 2010, Madden was scheduled to work a total 2080 hours. He missed 584 hours without leave and took 75 hours sick leave, 14 hours personal leave, 50 hours vacation leave, and 72 hours holiday leave. Madden only worked 1285 hours, or approximately 61% of what he was supposed to.

It is not known if Madden alerted Judge Lewis of his decision to apply for the position in Frank Fina's office while he was presiding over Preski's case. This is in direct contradiction to the Code of Conduct for Employees of the Unified Judicial System.[9] If conducted properly, Judge Lewis should have been alerted of Madden's application and had the opportunity to weigh the decision of isolating him from the matter. *See Wortham v. KarstadtQuelle AG (In re Nazi Era Cases Against German Defendants Litig.)*, 153 F. App'x 819, 826 (3d Cir. 2005) ("Isolation of law clerks usually ameliorates the appearance of impropriety."). This would have alerted Judge Lewis to Madden's subliminal and/or real biases in favor of his future employer and, at the time, the assessor of his application.

A conflict of interest between a law clerk and prosecutor may not always be material. However, in this present matter the conflict must be considered material. The law clerk, a confidant of Judge Lewis, was vying for a position with lead prosecutor Frank Fina. This certainly leads to a presumption of Madden's biases being imputed to chambers in the absence of isolation. *See Hamid v. Price Waterhouse*, 51 F.3d 1411, 1416 (9th Cir. 1995) ("Even if the judge has no reason to recuse herself based upon her own circumstances, a law clerk's relationships might cause the impartiality of decisions from that judge's chambers in which the

---

[9] Pursuant to the Code of Conduct For Employees of the Unified Judicial System, under the "GENERAL STANDARDS OF CONDUCT" section, Madden, as an employee of the Unified Judicial System shall conduct themselves in an appropriate and lawful manner at all times and shall adhere to all UJS policies including: (iv.) shall avoid impropriety and the appearance of impropriety in all activities. Applying for a position in the office of a prosecutor before him in a criminal matter is undoubtedly a failure to uphold the "appearance of impropriety in all activities." Tangentially, Frank Fina violated Code of Conduct For Employees of the Unified Judicial System in hiring Madden as he expedited her hiring and bypassed an experienced prosecutor all the while Madden's credential lacked. Employees of the United Judicial System, "[r]eflecting the values of impartiality and fairness that promote the integrity of Pennsylvania's courts, [are required] to recruit and employ the most qualified job applicants through an open and competitive hiring process which allows for a full, complete, and unbiased assessment of each applicant's relative knowledge, experience, skills, and abilities."

clerk participates reasonably to be questioned."); *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1311 (10th Cir. 2015) ("If a law clerk continues to work on the case in which his or her impartiality might reasonably be questioned, however, the clerk's actual or potential conflict may be imputed to the judge."); *Doe v. Cabrera*, 134 F. Supp. 3d 439, 449 (D.D.C. 2015) ("any bias of a law clerk is imputed to the Court only when the clerk substantively participates in a case where that bias can potentially manifest itself.").

Preski entered his plea unaware of the conflict of interest between the judiciary and the prosecution; a plea he would not have entered had he known he was being denied a fair and impartial trial.

Frank Fina has rightfully earned himself the designations: "a crusader who thought he was above the law"[10] and "an unethical, and overzealous prosecutor who trampled on the constitutional rights of his targets."[11] Had Preski been aware of the conflict of interest between the presiding law clerk and the prosecution, he could have taken immediate action to remedy the situation. Instead, given the undisclosed nature of Madden's application, it was not reasonably possible for Preski to avail himself of this information.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this Court grant discovery and a hearing on the petition.

---

[10] Most recently, the Disciplinary Board of the Supreme Court of Pennsylvania has made a unanimous recommendation that Frank Fina's law license be suspended for one year and a day for his "reprehensible" and "inexcusable" conduct. The Board said Fina was guilty of purposely deceiving a grand jury judge. *See* Ralph Cipriano, *Frank Fina Gets Spanked!*, Big Trial (Jun. 6, 2019), http://www.bigtrial.net/2019/06/frankie-fina-gets-spanked.html; Ralph Cipriano, *Amid Smirks And Mocking, An Ethics Expert Rips Frank Fina*, Big Trial (Jun. 14, 2018), http://www.bigtrial.net/2018/06/ethics-expert-rips-frank-fina.html.
[11] *Id.*

By: _/s/ George Bochetto_
George Bochetto, Esquire
**BOCHETTO & LENTZ, P.C.**
1524 Locust Street
Philadelphia, PA 19102
(215)735-3900
gbochetto@bochettoandlentz.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRIAN PRESKI** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **JOSH SHAPIRO, et al.** | : | **NO. 3:19-CV-00288** |

**(Judge Caputo)
(Magistrate Judge Carlson)**

<u>**CERTIFICATE OF SERVICE**</u>

I, George Bochetto, Esquire, hereby certify that on July 25, 2019, a copy of *Preski's Reply To Commonwealth's Response To The Petition For Writ of Habeas Corpus and Memorandum of Law* was served through the Court's ECF system upon:

Hugh J. Burns, Jr., Esquire
Deputy Attorney General
Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
hburns@attorneygeneral.gov

/s/ George Bochetto, Esquire
George Bochetto, Esquire
**BOCHETTO & LENTZ, P.C.**
1524 Locust Street
Philadelphia, PA 19102
(215)735-3900
gbochetto@bochettoandlentz.com