**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

BRIAN PRESKI,

    Petitioner,

    v.

JOSH SHAPIRO, *et al*.,

    Respondents.

CIVIL ACTION NO. 3:19-CV-00288

(JUDGE CAPUTO)

(MAGISTRATE JUDGE CARLSON)

## **MEMORANDUM**

Presently before me is Magistrate Judge Carlson's Report and Recommendation ("R&R") (Doc. 14) to the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. 1 ("Petition")) filed by Petitioner Brian Preski ("Preski" or "Petitioner"). Because the Petition was not timely filed and is not subject to statutory or equitable tolling, the R&R will be adopted and the Petition will be dismissed. A certificate of appealability will not issue because reasonable jurists could not disagree about the timeliness of Preski's claims.

### **I. Background**

On October 5, 2011, Preski pled guilty to charges of conflict of interest, theft of services, and criminal conspiracy. (Doc.1 at ¶ 25); *Commonwealth v. Preski*, 2017 WL 6330771, at *1 (Pa. Super. 2017).[1] The facts underlying his plea were concisely set forth by Magistrate Judge Carlson and the Superior Court of Pennsylvania:

> Preski was a chief of staff for former Pennsylvania Speaker of the House John Perzel. In 2009, he was one of multiple defendants, including Perzel and former House Representative Brett Freese, indicted by grand jury and charged with a scandal

---

[1] I note that the Superior Court's designation of *Commonwealth v. Preski* as "non-precedential" does not apply to federal courts. *See Schwartz v. Abex Corp.*, 106 F.Supp.3d 626, 649 at n. 63 (E.D. Pa. 2015) ("While the Pennsylvania rules prohibit Pennsylvania state courts from citing unpublished (or non-precedential) opinions, such prohibition does not apply to federal courts.").

> known as "Computergate." . . . "Computergate[ ]" [was] a scheme in which taxpayers funds, employees, and other resources were misused for partisan campaign purposes by elected members of the Pennsylvania House of Representatives, and, in particular, by members of the House Republican Caucus, from 2001-2007. The misused government resources were directed toward the purchase and implementation of technological services, equipment, and data that permitted analysis of individual voter information for use in political campaigns. Emerging mobile communication technologies designed for political campaign workers were integrated with massive databases of voter data to provide campaign operatives with extensive capabilities to identify and mobilize voters for partisan get-out-the-vote operations and to facilitate direct messaging of information of interest to individual voters or particular groups of voters.

(Doc. 14 at 3-4) (quoting *Commonwealth v. Preski*, 2017 WL 6330771, at *1) (internal quotation and citation omitted)). "Most of Preski's co-defendants [ ] pleaded guilty before trial," but Preski and others continued on to trial and pled guilty six days into the proceedings. (Doc. 1 at ¶ 25); *Commonwealth v. Preski*, 2017 WL 6330771, at *1. On March 21, 2012, Preski was sentenced to 24 to 48 months of imprisonment, followed by five years of probation and payment of fines and restitution. (*Id*. at ¶ 26); *Commonwealth v. Preski*, 2017 WL 6330771, at *1. Preski filed no appeal, and as such, the conviction became final on April 20, 2012, 30 days after his sentencing. *Commonwealth v. Preski*, 2017 WL 6330771, at *1; *see also* 42 Pa.C.S. § 9545(b)(3) (stating that judgment becomes final in Pennsylvania once direct review ends); Pa. R. Crim. P. 720(A)(3) (stating that defendants in Pennsylvania must file notices of appeal within 30 days of the imposition of the sentence).

Preski took no further action in this case until over three years later, when he filed a Post-Conviction Relief Act ("PCRA") Petition in Pennsylvania state court on October 9,

2015 claiming that:

> (1) "multiple witness statements and other evidence containing exculpatory and impeachment evidence were improperly suppressed or destroyed by the [Office of the Attorney General ("OAG");]" and (2) the OAG violated his right to a fair and impartial trial by "offering, assisting in the procurement of, and ultimately, providing employment to the trial court's Judicial Law Clerk during the time Preski's case was pending before the Court, while that Clerk was integrally involved in the adjudication of material issues in Preski's case."

*Id*. at *2 (quoting Preski's PCRA Petition at ¶¶ 19, 21); *see also* Pa.C.S. §§ 9541 *et seq*. (outlining the scope of permissible post-conviction relief in Pennsylvania for claims of innocence or other forms of collateral relief). This PCRA Petition was dismissed as untimely by the Dauphin County Court of Common Pleas because Preski failed to file within one year from when the judgment in his criminal case became final and because he otherwise failed to otherwise meet any of the exceptions to the one year limitation period. *Id*. at *2-5; *see also* 42 Pa.C.S. §§ 9545(b)(1)(i)-(iii) (setting forth the applicable deadlines to file for relief under the PCRA). In December 2015, Preski filed additional motions to recuse the PCRA judge for bias and to compel discovery of all *ex parte* emails between the OAG and the same judge, both of which were denied. *Id*. at *2.

Preski appealed this dismissal asserting that newly discovered facts qualified his petition for a tolling of the applicable limitation period. *Id*. at *3-4. Specifically, Preski claimed that only after his co-defendant Brett Feese filed a PCRA petition ("Feese's Petition") did he discover that the OAG deliberately withheld certain exculpatory evidence during its investigation, *i.e.*, statements made by his administrative assistant Lori Lochetto asserting his innocence. *Id*. at *4. The Superior Court found that because Preski exercised no due diligence in discovering this exculpatory testimony prior to obtaining a copy of

3

Feese's Petition, a duty which the PCRA puts on Preski if he wishes to toll the limitation period, the lower court was correct in dismissing his petition. *Id*. at *6; *see also* 42 Pa.C.S. § 9545(b)(1)(ii) (stating that the one year limitations period may be tolled when "the facts upon which the claims is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence"). The Superior Court further denied Preski's contention that he should have been granted a hearing or additional discovery on his motion to recuse the judge for bias but it did grant him relief from his restitution payments to the Commonwealth on other grounds. *Id*. at *6-8. On September 5, 2018, the Supreme Court of Pennsylvania denied to hear Preski's appeal of this decision. *Commonwealth v. Preski*, 193 A.3d 887 (Pa. 2018).

On February 19, 2019, Preski filed the instant Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254(d). (Doc. 1). Preski raises three claims in his Petition: (1) destruction of witness statements and proffer notes, the content of which would have exculpated Preski and was not reasonably discoverable until August 2015; (2) bias by the trial court judge who's former clerk was hired by the Attorney General's office shortly after Preski pled guilty; and (3) severe misconduct by the prosecutor in his case. (*See* Doc. 1).

Magistrate Judge Carlson conducted an initial review of Preski's Petition and authored an R&R dated September 30, 2019 which recommends I dismiss the Petition as untimely and as not eligible for statutory or equitable tolling. (*See* Doc. 14 at 20-28). Magistrate Judge Carlson further found that the allegation of *Brady* violations has no merit because of lessened *Brady* protection at the plea stage and an otherwise voluntary and knowing plea. (Doc. 14 at 31). Magistrate Judge Carlson finally found that the bias claim was also without merit absence any evidence of actual bias. (*Id*. at 31). As such, the R&R recommends I dismiss these claims as well.

Preski filed three timely objections to the R&R on October 14, 2019: "(1) the R&R

4

misstates factual details regarding Preski's awareness of evidence suppression, 2) the R&R misstates law in setting forth a requirement of due diligence subsequent to a *Brady* violation, and 3) the R&R misstates the law and facts applicable to when Preski's *Brady* rights were triggered." (Doc. 15 at 2).

## II. Legal Standard

Where objections to a magistrate judge's R&R are filed, the Court must conduct a *de novo* review of the contested portions. *Sample v. Diecks*, 885 F.2d 1099, 1106 at n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c)). This only applies to the extent that a party's objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). Conversely, for those sections of the R&R to which no objection is made, the district court may determine the appropriate standard for review, *see Thomas v. Arn*, 474 U.S. 140, 154 (1985), and, at the least, should "satisfy itself that there is no clear error on the face of the record [or manifest injustice] in order to accept the recommendation." *See Univac Dental Co. v. Dentsply Int'l, Inc.*, 702 F. Supp. 2d 465, 469 (M.D. Pa. 2010) (citing *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)); *see also Crist v. Kane*, 2016 WL 5373645, at *1 (M.D. Pa. 2016) (internal citations and quotation omitted) ("[I]f objections are merely general in nature, the court need not conduct a complete de novo determination."); *Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998) (holding that the district court should review uncontested portions for clear error or manifest injustice); FED. R. CIV. P. 72(b)(1) advisory committee's notes (describing standards for evaluating recommendations made by magistrate judges).

In conducting a *de novo* review, a court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the law permits the court to rely on the recommendations of the magistrate

judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994).

## III. Discussion

In his petition, Preski asserts that he was not "aware of the extent of suppressed exculpatory evidence," and that he did not have an obligation to investigate, at any stage of his proceedings, the Government's representation that it disclosed all exculpatory evidence, which Preski alleges included certain statements which could have helped prove his innocence or would have otherwise weighed on the outcome of the case. (Doc. 15 at 5-11; *see also* Doc. 1 at ¶¶ 38-70). This alleged deprivation of exculpatory evidence is the same basis which Preski rests his desire to be excused from the timeliness requirements of AEDPA. (*Id*. at 4). As such, I will treat Preski's assertions as specific objections to Magistrate Judge Carlson's finding that Preski is not entitled to any tolling of the limitation period and conduct a de novo review on the matter. *See Risjan v. Wetzel*, 2019 WL 3146207, at *13 (M.D. Pa. 2019) (evaluating substantive arguments of habeas petition for whether they would qualify the petition for limitations tolling).

**A.  Timeliness**

Magistrate Judge Carlson found that Preski failed to file his Petition within one year from his judgment becoming final. (Doc. 14 at 20). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a one-year statute of limitations for § 2254 petitions filed by a person in state custody. *See* 28 U.S.C. § 2244(d)(1) ("§ 2244"). Specifically, 28 U.S.C. 2244(d) provides in relevant part:

(1) A 1-year period of limitations shall apply to an application for writ of habeas corpus

by a person in custody pursuant to the judgment of a State court. The limitations

period shall run from the latest of ---

6

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §§ 2244(d)(1)-(2); *see also Wall v. Kholi*, 562 U.S. 545, 550 (2011) (discussing application of § 2244's timeliness requirements); *Romansky v. Supt. Greene SCI*, 933 F.3d. 293, 298-99 (3d Cir. 2019) (same); *Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 84 (3d Cir. 2013) (same). Further, as laid out by the statute, if a petition is filed beyond the year limitation period, it must qualify for statutory or equitable tolling in order to proceed. *Ovens v. District Attorney, Lackawanna County, Pennsylvania*, 2019 WL 6130488, at *2 (M.D. Pa. 2019)

Preski had one year from the date his conviction became final to seek federal habeas corpus relief pursuant to 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244(d)(1)(A) (stating that petitioner has one year from date which the judgment became final to file for habeas corpus relief). Preski's judgment became "final on April 20, 2012, 30 days after he was sentenced and the time for filing a direct appeal expired." *Commonwealth v. Preski*, 2017 WL

6330771, at *2. Thus, Preski had until April 20, 2013 to file a federal habeas corpus petition. Preski's petition was not filed until February 19, 2019, 2,131 days after the statutory deadline. Consequently, as stated in the R&R, unless Preski's petition is subject to statutory or equitable tolling, it is time-barred. (*See* Doc. 14 at 20).

(1) Statutory Tolling

Magistrate Judge Carlson found that "[b]ecause the Superior Court correctly found that Preski did not qualify for any of the exceptions to the PCRA's filing deadlines, he is not entitled to statutory tolling under AEDPA since his PCRA petition was not properly filed." (Doc. 14 at 22). The one-year AEDPA limitations period is subject to statutory tolling by the pendency of a "properly filed" State post-conviction or other collateral review proceeding. *See* 28 U.S.C. s 2244)(d)(2). A "properly filed application is one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998). Where a petitioner's application "for state post conviction relief [is] rejected as untimely …. [it is] not 'properly filed' under § 2244(d)(2)" and is not entitled to statutory tolling of the one-year limitations period. *Allen v. Seibert*, 522 U.S. 3, 7 (2007); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (holding that where the state court dismissed a petitioner's PCRA petition as untimely, that the petition "was not 'properly filed' and not entitled to statutory tolling under § 2244(d)(2)"). "The law is clear that a federal habeas court must defer to the state court's ruling as to whether a PCRA petition is untimely" as long that state court made a clear determination on the issue. *Rowe v. Giroux*, 2016 WL 4440236, at *4 (M.D. Pa. 2016); *see also Jenkins*, 705 F.3d at 85 (internal citations and quotations omitted) ("Thus, if a state court determines that an application is untimely, that is the end of the matter for purposes of statutory tolling of AEDPAs limitation period, regardless of whether it also addressed the merits of the claim, or whether its timeliness rule was entangled with the merits.").

Preski filed his PCRA Petition on October 9, 2015. *Commonwealth v. Preski*, 2017 WL 6330771, at *2; (Doc. 1 at ¶ 30). On January 9, 2017, the trial court dismissed his Petition as untimely. *Id*. On December 12, 2017, the Pennsylvania Superior Court explicitly affirmed this dismissal because the application was untimely under the PCRA, on its face, and also failed to meet any of the PCRA's grounds for tolling the limitation period. *Commonwealth v. Preski*, 2017 WL 6330771, at *2; *see also Merritt v. Blaine*, 326 F.3d 157, 165-66 (holding that courts should treat PCRA petitions dismissed for untimeliness on their face the same as those which are dismissed for failing to meet a tolling exception). Therefore, I agree with Magistrate Judge Carlson that because the state court clearly ruled that Preski's application was untimely and therefore not properly filed, his application will not statutorily toll § 2244's one-year limitations period.

### (2) Equitable Tolling

Magistrate Judge Carlson found that Preski failed to exercise reasonable diligence in uncovering the "newly discovered" exculpatory statements given the ease of communication with Lori Lochetto as well as the knowledge that these statements might have existed well in advance of Feese's Petition. (Doc. 14 at 24-28). Magistrate Judge Carlson also noted that Preski has not established any extraordinary circumstances as to why he could not file his Petition earlier. (*Id*.). Magistrate Judge Carlson then further found that Preski has failed to present any meritorious claim of actual innocence to otherwise toll the statute, and, in any event, Preski's procedural default on his claims bar a federal court from entertaining his petition. (*Id*. at 28-29). Preski objects to these conclusions on the grounds that he was entitled to certain exculpatory evidence under *Brady*, that he did not receive that evidence, and that he could not have reasonably been expected to uncover that evidence. (Doc. 15 at 5-10).

AEDPA's one-year limitations period may be subject to equitable tolling when the petitioner shows that he "has been pursuing his rights diligently," and yet "some extraordinary

circumstance stood in his way and prevented timely filing" of his petition. *Holland v. Florida*, 560 U.S. 631, 649 (2010); *see also Ross v. Varano*, 712 F.3d 784, 803 (3d Cir. 2013). "However, courts need to be 'sparing in their use of' the doctrine," *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011) (quoting *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999)), as it does not extend to a "garden variety claim of excusable neglect." *Schlueter v. Varner*, 384 F.3d 69, 83 (3d Cir. 2004) (citing *Irwin v. Dep't Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 96, 112 L.Ed.2d 435 (1990)). Accordingly, equitable tolling is used only in "extraordinary" and "rare" circumstances. *See Satterfield v. Johnson*, 434 F.3d 185, 195 (3d Cir. 2006).

"The United States Court of Appeals for the Third Circuit has found that extraordinary circumstances may occur when: (1) the respondent has actively misled the petitioner; (2) if the petitioner has in some extraordinary way been prevented from asserting his rights; or (3) the petitioner has timely asserted his rights but mistakenly in the wrong forum," *Jones*, 195 F.3d at 159 (internal citation and quotation omitted); or (4) the court has misled the petitioner regarding the steps that he needs to take to preserve a claim. *See Brinson v. Vaughn*, 398 F.3d 225, 230 (3d Cir. 2005). "[I]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir 2003) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)). As such, equity demands that those who "sleep" on their rights are not awarded relief. *Munchinski v. Wilson*, 694 F.3d 308, 331-32 (3d Cir. 2012) (citing *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir.)). Further, "'to determine if a petitioner has been [reasonably] diligent in pursuing his petition, courts consider the petitioner's overall level of care and caution in light of his or her particular circumstances.'" *Id.* at 330 (quoting *Doe v. Busby*, 661 F.3d 1001, 1013 (9th Cir. 2011). The petitioner bears the burden of establishing that he is entitled to benefit

from this equitable tolling.  *See Pace*, 544 U.S. at 418.

The Supreme Court has also recognized that a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of "a procedural bar … or … expiration of the statute of limitations" under the miscarriage of justice exception.  *See McQuiggin v. Perkins*, 569 U.S. 383, 386, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013).  To succeed on this claim, a petitioner must present new evidence which shows that he is factually innocent and that "'*no juror* would have convicted him in light of the new evidence.'" *Ovens*, 2019 WL 6130488, at *4 (quoting *Schlup v. Delo,* 513 U.S. 298, 324 (1995) (emphasis added)).  This exception is rarely met.  *See Williams v. Cappozza*, 2019 WL 2612778, at *4-5 (M.D. Pa. 2019) (emphasizing the limited applicability of the actual innocence exception).

In this case, the Superior Court found that "[a]lthough Preski did not have Lochetto's statement at that time [leading up to his original trial] certainly, he suspected that questioning some of the grand jury witnesses might yield facts supporting his claim."  *Commonwealth v. Preski*, 2017 WL 6330771, at *6.  Further, the Superior Court found that Lochetto was more than some random witness unknown to Preski, rather, she was his former administrative assistant and it was not difficult for him to contact her.  *Id*. ("Lochetto was not simply one of 183 Grand Jury witnesses he could have contacted . . . [s]he was not a stranger, but rather, his former administrative assistant, a witness whom he should have been able to easily contact").  Giving deference to these factual findings, *see Palmer v. Hendricks*, 592 F.3d 386, 391-92 (3d Cir. 2010) (holding that state court factual findings are presumed to be correct at the federal level), the Petitioner has failed to demonstrate that he could not, through the exercise of reasonable diligence, have gained access to the statements of Lori Lochetto or that he was prevented from gathering exculpatory information about his case.  *See Tejeda v. United States*, 2018 WL 783069, at *4 (D.N.J. 2018) ("The Petitioner must [ ] show that he is

11

entitled to a later start date based on a Government created impediment or new evidence by identifying the alleged Brady material he has been denied and establishing that it either could not have been acquired in a timely fashion through due diligence or that he was actively prevented from acquiring the material until some point within one year of the date on which he filed his § 2255 motion").

As noted by the Superior Court, Preski had full access to the grand jury witness lists at the time of his trial and in preparation for his trial and has had continuous access to Lori Lochetto since his conviction. *See Commonwealth v. Preski*, 2017 WL 6330771, at *6. With this information, Preski sat on his hands for three years and did not attempt to contact Lori Lochetto or uncover exculpatory information from the witnesses. *Compare* (Doc. 15 at 6-7 (stating that Preski only reached out to Lori Lochetto after Feese's Petition was filed) *with Munchinski*, 694 F.3d 308, at 331-32 (holding that petitioner exercised reasonable diligence with regard to his rights when he filed five post-conviction relief petitions while continuing to collect evidence throughout the process and while also filing a petition in state court while petition in federal court was pending).

The Petitioner similarly did not exercise reasonable diligence in filing this petition because he failed to do so in conjunction with his state court proceedings, creating a gap of over three years between when he discovered this "new" evidence in October 2015 and when he filed the instant petition in February 2019. *See Garrick v. Diguglielmo*, 162 Fed.Appx. 122, 125 (3d Cir. 2005) (noting that "nothing prevented [petitioner] from filing a timely [federal] petition and then seeking to amend or otherwise complete it as 28 U.S.C. § 2242 and Fed.R.Civ.P. 15(a) would allow," once all pending state proceedings resolved); *see also Pace*, 544 U.S. at 416 (rejecting argument that exhaustion requirement forced petitioner to wait and see if PCRA petition was timely before filing habeas petition because petitioner could have filed timely "protective" habeas petition); *Tyler v. Palakovich*, 2006 WL 485306, at *6 (M.D. Pa.

2006) (rejecting petitioner's argument that he "needed to exhaust state court remedies on his 'newly discovered evidence' claim before filing a federal habeas petition" because petitioner could have filed timely "protective" habeas petition).

Further, even if Petitioner had exercised reasonable diligence in pursuit of his rights, he presents no extraordinary circumstance which would make him eligible for review under equitable tolling. The witnesses were available to Preski for years leading up to his PCRA Petition and nothing the OAG did prevented him from contacting any of the witnesses and asking them what they said in their interviews. Nor did the OAG mislead Preski as to his ability to file a petition. As such, the OAG created no impediment to Preski's ability or right to file a habeas petition. *See Garrick*, 162 Fed.Appx. at 125 (internal citation and quotation omitted) (holding that no extraordinary circumstances existed where there were no claims that anything "actually stood in [the] way" of petitioner asserting his rights and where he otherwise had the capabilities to file a petition)*; see also Pettiford v. Vincent*, 2008 WL 2945389, at * 1 (E.D. Pa. 2008) (finding no extraordinary circumstances where petitioner wasn't actually hindered from filing his petition); *Walthour v. Gibson*, 2010 WL 3419675, at *9-10 (E.D. Pa. 2010) (holding that no extraordinary circumstances existed where petitioner failed to request access to evidence before it was destroyed because nothing prevented him from requesting the evidence years sooner); *Dean v. Folino*, 2008 WL 5429626, at *4 (E.D. Pa. 2008) (same).

Further, any claims of "actual innocence" also fail because, to the extent that Preski presents new evidence in the form of Lori Lochetto's statements and violations by OAG, he fails to show both how those statements make him factually innocent and how they would make the court doubt the outcome of the trial. *See King v. Tritt*, 2014 WL 2865090, at *15-17 (M.D. Pa. 2014) (holding that testimony of witness presenting new exculpatory evidence was not sufficient to trigger actual innocence exception where jury could have still found petitioner guilty despite new evidence); *Williams*, 2019 WL 2612778, at*5 (internal citations and

13

quotation omitted) (holding that the court should apply the actual innocence exception where "a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."). Petitioner has merely asserted that the OAG committed *Brady* violations but has not connected those violations with actual innocence. (*See generally* Doc. 1 at ¶¶ 38-70 (describing how withheld witness statements would have effected trial preparation and willingness to take a plea, but failing to assert actual innocence)); *see also Roberts v. District Attorney of Couty of Montgomery County*, 2018 WL 4615998, at *1 n.2 (M.D. Pa. 2018) (holding that alleged *Brady* violation did not support assertion of actual innocence).

Therefore, I agree with Magistrate Judge Carlson that because the Petitioner failed to exercise reasonable diligence in pursuit of his rights and did not face any extraordinary circumstance preventing his filing, his Petition "does not show that 'sound legal principles as well as the interests of justice' demand pursuit of the 'sparing' doctrine of equitable tolling" and, as such, the Petition will not equitably toll § 2244's one-year limitation period. *McKeithan v. Varner*, 108 Fed.Appx. 55, 59 (3d Cir. 2004) (quoting *Robinson v. Johnson*, 313 F.3d 128, 143 (3d Cir. 2002).

**C.    Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. 28 U.S.C. § 2253(c); *see also Gonzales v. Thaler*, 565 U.S. 134, 143 n. 5 (2012) ("The courts of appeals uniformly interpret "circuit justice or judge" to encompass district judges."). "A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right." *Ovens*, 2019 WL 6130488, at *4. "A petitioner 'satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his [constitutional claims]' or that jurists could conclude 'that the issues

14

presented are adequate to deserve encouragement to proceed further.'" *Id*. (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 323-24 (2003)). In the instant matter, jurists of reason would not find the disposition of Preski's petition, being dismissed as untimely, debatable. As such, I will not issue a certificate of appealability in this case.

## IV. Conclusion

Because Preski's petition is untimely, the timeliness portions of Magistrate Judge Carlson's Report and Recommendation will be adopted and Preski's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254(d) will be dismissed.[2] *See Curran v. Snyder*, 2012 WL 1079152, at *2 (M.D. Pa. 2012) (adopting the portion of a Report and Recommendation dismissing claim for lack of subject matter jurisdiction and declining to address alternative grounds for dismissal). No certificate of appealability will issue.

An appropriate order follows.

| January 21, 2020 | /s/ A/ Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
| | United States District Judge |

---

[2] Because Preski's petition is untimely, I do not need to reach the merits of his claims or whether his claims were procedurally defaulted. *See Ohler v. Lamas*, 542 Fed.Appx. 205, 208 (3d Cir. 2013) (declining to address arguments on the merits after dismissing petition for untimeliness); *Williams v. Pennsylvania*, 2011 WL 780673, at *1 n.1 (E.D. Pa. 2011) ("Because I conclude that petitioner's claims are time-barred, I cannot legally reach the merits of his claims."); *see also Risjan*, 2019 WL 3146207, at *25 ("Under the procedural default rule doctrine, a district court does not reach the merits of a defaulted claims unless the petitioner can show 'cause and prejudice' or that a 'fundamental miscarriage of justice' will result if the court does not consider the merits.").

15